WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


MARIA AVILA, an individual and on        )
behalf of the Estate of GILBERTO AVILA,  )
                                         )
                          Plaintiff,     )
                                         )
              vs.                        )
                                         )
MOHAVE COUNTY, et al.,                   )
                                         )        No. 3:14-cv-8124-HRH
                          Defendants.    )        (Prescott Division)
_____)


<u>O R D E R</u>

<u>Discovery Motions</u>

Plaintiff requests that the stay in this case be lifted and that the pending discovery motions be resolved.[1]  Plaintiff's request is granted.  This case is no longer stayed and the discovery motions are resolved herein.

Defendant Corizon Health moves for entry of a protective order.[2]  This motion is opposed and plaintiff cross-moves to compel production of Corizon's mortality reviews

_____

[1]Docket No. 92.

[2]Docket No. 57.

and financial records.[3]  Plaintiff's cross-motion is opposed.[4]  Plaintiff also moves to compel answers to some of its interrogatories.[5]  This motion is opposed.[6]  Oral argument has been requested on Corizon's motion for entry of a protective order but is not deemed necessary.

<u>Background</u>

Plaintiff is Maria Avila.  Defendants are Mohave County; Sheriff Tom Sheahan; Tommy Sides; Peter Taylor; Corizon Health, Inc., f/k/a Prison Health Services, Inc.; Sheila Schoff; Jeff Hein; Mary Susan Cagle Short; Donovan Schmidt, D.O.; and Kingman Medical Association, Inc.

Plaintiff's son, Gilbert Avila, Jr., was incarcerated at the Mohave County Detention Facility on May 13, 2013.  On May 16, 2013, Mr. Avila complained to a correctional officer that his ribs were hurting and that he was having trouble breathing.  Mr. Avila was unable to get into his top bunk without help from other inmates.  L.P.N. Jeff Hein was summoned and he observed normal respirations and took Mr. Avila's blood pressure and pulse, which were within normal limits.  Hein reported his observations to Charge Nurse Susie Cagle Short.

---

[3]Docket Nos. 83 & 84.

[4]Docket No. 87.

[5]Docket Nos. 72.

[6]Docket No. 80.

On May 17, 2013, Cagle Short responded to a call that Mr. Avila was hyperventilating. Cagle Short brought Mr. Avila to the medical unit and conducted an assessment. Mr. Avila complained of rib pain, back pain, and abdominal pain. Cagle Short tested Mr. Avila's blood sugar, which was high although he reported no history of diabetes.

Cagle Short called Dr. Donovan Schmidt to report her findings. Dr. Schmidt prescribed Bactrim, Motrin, and insulin and gave an order for a straight catheter to determine if Mr. Avila had residual urine in his bladder. Mr. Avila was kept in the medical unit for observation. At approximately 3:00 a.m. on May 18, 2013, L.P.N. Sheila Schoff tested Mr. Avila's blood sugar which was high. Mr. Avila agreed to take the ordered dose of insulin but declined to take his other medications. Mr. Avila also vomited a small amount of liquid at this time. At some point in time, Mr. Avila returned to his cell. At approximately 5:03 a.m. on May 18, 2013, he was found unresponsive. CPR efforts were unsuccessful and Mr. Avila died. An autopsy was performed and the cause of death was determined to be purulent peritonitus due to a perforated gastric ulcer.

Plaintiff commenced this action on May 8, 2014 in state court. The case was subsequently removed to this court. In her amended complaint, plaintiff asserts negligence, gross negligence, medical malpractice, and § 1983 claims.

During discovery, plaintiff sought to depose a Corizon representative regarding 1) the "financial considerations" between Corizon and Dr. Schmidt and/or Kingman Medical Association and between Corizon and Mohave County, 2) the mortality review of Mr. Avila's death,[7] and 3) Corizon's performance evaluations of Dr. Schmidt, Schoff, Hein, and Cagle Short. Plaintiff also requested production of Corizon's annual and quarterly financial reports from January 1, 2010 through December 31, 2014, the morality reviews, and the performance evaluations.

Corizon now moves for a protective order precluding plaintiff from taking any of this discovery. Plaintiff cross-moves to compel production of any peer or mortality reviews and Corizon's annual and quarterly reports from January 1, 2010 through December 31, 2014. Plaintiff also cross-moves to compel Corizon to produce its most knowledgeable person to testify about the financial terms of the contract between Corizon and Mohave County and the contract between Corizon and Dr. Schmidt. And, plaintiff moves to compel certain defendants to answer certain interrogatories.

<u>Discussion</u>

Rule 26(c), Federal Rules of Civil Procedure, governs the entry of protective orders. Rule 26(c)(1) provides in pertinent part that

---

[7]Corizon's policy is that inmate deaths are reviewed in accordance with the Corizon Sentinel Event Policy. Exhibit 5, SEALED Plaintiff's Response [etc.], Docket No. 68.

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending.... The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

* * *

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

* * *

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]

"For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." Id. The factors the court considers are:

"(1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information

> among litigants will promote fairness and efficiency; (6)
> whether a party benefitting from the order of confidentiality is
> a public entity or official; and (7) whether the case involves
> issues important to the public."

In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 424-25 n.5 (9th Cir.

2011) (quoting Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)).

First, plaintiff seeks to depose a Corizon representative about the "financial

considerations" of the contract between Corizon and Mohave County and seeks the

production of Corizon's annual and quarterly financial reports from January 1, 2010

through December 31, 2014.[8] Corizon contends that this information is presumably being

sought so plaintiff can determine if any concern about spending money went into the

decision-making process as to what type of treatment Mr. Avila received while at the

Mohave County Detention Facility.  Corizon argues, however, that this information is

completely irrelevant to the claims at issue, would result in undue harm if released, and

is available through other means.

Plaintiff argues that the information about Corizon's contract with Mohave County

is relevant because it will tend to show the financial considerations involved in terms of

transferring a patient to a local hospital or other outside medical provider.  As for the

quarterly and annual financial reports, she argues that this information would be relevant

---

[8]Request for Production No. 5, Plaintiff's First Set of Discovery Requests upon
Defendant Corizon Healthcare, Inc., Exhibit 10, SEALED Plaintiff's Response [etc.], Docket
No. 68.

to an award of punitive damages.  See Grant v. Arizona Public Service Co., 652 P.2d 507, 522 (Ariz. 1982) ("a defendant's financial statements are irrelevant in the ordinary case, but are admissible to show wealth or financial status of the wrongdoer where an issue regarding punitive damages is submitted to the jury"); see also, Baker v. CNA Ins. Co., 123 F.R.D. 322, 330 (D. Mont. 1988) ("Ordinarily, Fed.R.Civ.P. 26(b) does not permit the discovery of facts concerning a party's financial status since such matters are not relevant.... Where a claim for punitive damages is made, however, a party's financial status is relevant to the subject matter of the action and thus a proper subject of pretrial discovery").  Plaintiff argues that this information is also relevant to determine Corizon's financial health and whether it had an incentive to cut corners.

The fact that plaintiff has requested punitive damages does not mean that she is entitled to the production of Corizon's financial reports.  "[T]he State of Arizona has adopted a general rule mandating that 'prima facie proof of a defendant's liability for punitive damages [is necessary] before his wealth or financial condition may be discovered.'"  Richbourg v. Jimerson, Case No. CV–12–0136–TUC–BGM, 2012 WL 4355906, at *2 (D. Ariz. Sept. 24, 2012) (quoting Larriva v. Montiel, 143 Ariz. 23, 691 P.2d 735, 736 (Ariz. Ct. App. 1984)).  Plaintiff has yet to make any showing that she is entitled to recover punitive damages.  Thus, plaintiff may not take discovery on the issue of punitive damages

until she has made a <u>prima</u> <u>facie</u> showing that Corizon will be liable to her for Mr. Avila's death.

As for Corizon's contract with Mohave County, this evidence may be relevant to plaintiff's claim that financial considerations  may have played a role in the provision of medical care to inmates.  Plaintiff may take the deposition of the Corizon representative most knowledgeable about Corizon's contract with Mohave County and Corizon must produce the contract.  If Corizon is concerned about this being confidential information, the deposition can be designated as confidential and the contract may be produced as a confidential document as provided for in the parties' protective order/confidentiality agreement.[9]

Next, plaintiff seeks to depose a Corizon representative about the contract between Corizon and Dr. Schmidt and/or Kingman Medical Association, which is Dr. Schmidt's company, and she seeks production of Dr. Schmidt's contract.  Corizon argues that releasing this information would result in the release of Dr. Schmidt's private information which is irrelevant to any aspect of this litigation.  Corizon also contends that the release of this information could provide competitors of Corizon with a means to compete more effectively with Corizon.  Corizon further argues that this information is irrelevant because Dr. Schmidt's salary had no tendency to make a fact regarding Mr. Avila's treatment more

---

[9]Docket No. 18.

or less probable.  Corizon also contends that plaintiff could simply ask Dr. Schmidt if his salary affected any decisions he made with respect to Mr. Avila.

Dr. Schmidt's financial arrangement with Mohave County is relevant to plaintiff's claims and simply asking Dr. Schmidt whether his salary affected his medical decisions as to Mr. Avila is not a sufficient means of exploring the issue of whether Dr. Schmidt was motivated by financial concerns in his care of Mr. Avila.  Plaintiff may take the deposition of a Corizon representative most knowledgeable about Dr. Schmidt's contract with Corizon and Corizon shall produce a copy of Dr. Schmidt's contract.  Again, if Corizon is concerned about privacy issues, the deposition may be designated confidential and the contract may be designated a confidential document.

Thirdly, plaintiff seeks to depose a Corizon representative about the mortality review of Mr. Avila's death and plaintiff seeks the production of any peer or mortality reviews.[10]  Although Arizona treats peer reviews as privileged and thus not discoverable, the Ninth Circuit has held "that federal law recognizes no privilege of peer review in the context of a case involving the death of a prisoner."  Agster v. Maricopa County, 422 F.3d 836, 837 (9th Cir. 2005).

---

[10]Request for Production No. 15, Plaintiff's Third Set of Discovery Requests Upon Defendant Corizon Healthcare, Inc., Exhibit 7, SEALED Plaintiff's Response [etc.], Docket No. 68.

Corizon, however, urges the court to reconsider the standard set by the Ninth Circuit in Agster.  Corizon reminds the court that "[t]he law of privilege is not frozen", id. at 839, and suggests that it is now time to reconsider the ten-year old Agster decision, given that "'at least forty-six states and the District of Columbia' [have] enacted laws prohibiting the disclosure of peer review material."  Williams v. Univ. Medical Ctr. of S. Nev., 760 F. Supp. 2d 1026, 1031 (D. Nev. 2010) (quoting Weekoty v. United States, 30 F. Supp. 2d 1343, 1345–46 (D.N.M. 1998)).  "[T]he policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one."  Jaffee v. Redmond, 518 U.S. 1, 12-13 (1996).  Moreover, Corizon argues that conflicting privilege laws between state and federal courts only serve to "frustrate the purposes of the state legislation that were enacted to foster these confidential communications."  Id. at 13.

Corizon further argues that there is a good reason to create an exception to the general rule disfavoring privileges in this case.  "Rule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting 'common law principles ... in the light of reason and experience.'"  Id. at 8.  "Exceptions from the general rule disfavoring testimonial privileges may be justified, however, by a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'"  Id. at 9 (quoting Trammel v. United States, 445 U.S. 40, 50 (1980)).  Corizon argues that with regard to the peer review privilege in this case, the discernable public good to be

protected is the improvement of medical care for all inmates through the use of mortality reviews.  Corizon insists that the advancement of medical care for inmates is sufficiently important as to outweigh the need for probative evidence.

Corizon also contends that plaintiff can retain an expert to review Mr. Avila's medical records, which have already been produced, which would be similar to the process of what is done in a mortality review, thereby implying that plaintiff does not really need the mortality review.  And, Corizon argues that establishing a federal peer review privilege would be appropriate because of the "chilling" effect the lack of a privilege creates.  In Jaffee, "the question [was] whether it is appropriate for federal courts to recognize a 'psychotherapist privilege' under Rule 501 of the Federal Rules of Evidence."  Jaffee, 518 U.S. at 4.  The Court observed that "[i]f the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation."  Id. at 11-12.  Similarly here, Corizon argues that recognizing a peer review privilege would only serve to better the medical care provided to inmates because both those who create and are the subject of such reviews would be more willing to participate and less fearful of litigation.

The court declines Corizon's invitation to reconsider the binding Ninth Circuit precedent in Agster, which this court is obligated to follow.  See Yong v. INS, 208 F.3d 1116,

1119, n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it").  Pursuant to Agster, plaintiff is entitled to the production of the mortality reviews and she may take the deposition of a Corizon representative about the reviews.

If the court is not willing to recognize a federal peer review privilege, which it is not, then Corizon argues that the court should nonetheless apply the state law privilege to plaintiff's state law claims.  Corizon acknowledges that in Agster, the Ninth Circuit held that "[w]here there are federal claims present and pendent state law claims present, the federal law of privilege applies."  Agster, 422 F.3d at 839.  But, as Corizon points out, district courts have interpreted this statement differently.  For example, in Love v. Permanente Medical Group, Case No. C–12–05679 DMR, 2013 WL 4428806, at *3 (N.D. Cal. 2013), the court decided to "apply federal privilege law to all claims in this case", in large part because "published Ninth Circuit precedent holds that federal privilege law applies to both federal claims and pendent state law claims in cases in which its subject matter jurisdiction is premised on federal question jurisdiction."  However, in Guzman-Ibarguen v. Sunrise Hospital and Medical Center, Case Nos. 2:10–cv–1228-PMP–GWF, 2:10–cv-1983-PMP–GW, 2011 WL 2149542, at *13 (D. Nev. June, 1, 2011), the court determined that "a federal district court should not refuse to apply state law privileges where the information

sought is relevant only to a claim or defense to which state law supplies the rule of decision."

Although Corizon argues that the mortality reviews are not likely relevant to plaintiff's § 1983 claim, the court disagrees. The mortality reviews are relevant to all of plaintiff's claims, but even if they were not, the court is obligated to follow <u>Agster</u>, which plainly states that "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege applies. <u>Agster</u>, 422 F.3d at 839.

In sum, there is no federal privilege for peer or mortality reviews and Corizon must produce these reviews. Plaintiff also may take the deposition of the Corizon representative who is most knowledgeable about these reviews.

Next, plaintiff seeks to depose a Corizon representative about Corizon's evaluation of the performance of Dr. Schmidt, Schoff, Hein, and Cagle Short and plaintiff seeks the production of these employees' performance evaluations. Corizon argues that the performance evaluations should be subject to the peer review privilege, but, the employees' performance evaluations are not the same thing as a mortality review and whether a privilege applies to the performance evaluations is a separate question.

In her opposition to Corizon's motion for a protective order, plaintiff does not mention the performance evaluations but assuming that plaintiff still seeks this discovery,

she is entitled to the production of the employees' performance evaluations and she may depose a Corizon representative about the evaluations.

Next, plaintiff seeks to compel answers to her contention interrogatories.  In their answer to plaintiff's amended complaint, defendants Mohave County, Sheahan, Sides, Taylor, Schoff, Hein, Cagle Short, and Corizon Health, Inc. f/k/a/ Prison Health Services, Inc. ("the Answering defendants") assert forty-one affirmative defenses.  Plaintiff sought to establish the factual basis for these affirmative defenses by propounding the following six interrogatories:

> Interrogatory No. 1.  Please state with particularity the factual basis for your First Affirmative Defense that Plaintiff's damages were "caused in whole or in part, or were contributed to by reason of the negligence and/or intentional acts of the Decedent, Plaintiff, or by actions of a third person who is not within the control of these Answering Defendants."  Please identify each and every "third person" to whom you refer in this affirmative defense.
>
> Interrogatory No. 2.  Please state with particularity the factual basis for your Second Affirmative Defense in which you allege that Plaintiff's damages "were proximately caused or contributed to by Mr. Avila's own negligence or culpable conduct, and such negligence or culpable conduct was greater than the negligence, if any, of these Answering Defendants."
>
> Interrogatory No. 3.  Please state with particularity the factual basis for your Sixteenth Affirmative Defense.[11]

---

[11]The Sixteenth Affirmative Defense is that "[t]he damages alleged by Plaintiff were the result of independent, intervening acts, over which these Answering Defendants had

(continued...)

-14-

Identify any and all "independent, intervening acts" to which you refer.

Interrogatory No. 4:  Please state with particularity the factual basis for your Twenty-Eighth Affirmative Defense that Plaintiff failed to mitigate her/their damages.

Interrogatory No. 5.  Please state with particularity the factual basis for your Thirty-First Affirmative Defense in which you claim that Plaintiff failed to identify "indispensable parties."  Identify any such indispensable party.

Interrogatory No. 6.  Please state with particularity the factual basis for each of the remaining forty-one affirmative defenses not already addressed by these interrogatories....[12]

The Answering defendants objected to each of these interrogatories, asserting, among other things, that the

Interrogatory is overbroad, calls for a legal conclusion, and seeks information protected by the attorney-client and attorney work product privileges.  Moreover, this Interrogatory is premature as insufficient time has been afforded to these Answering Defendants to develop all Affirmative Defenses. Pursuant to Fed. R. Civ. P. 8(c), a party must set forth all affirmative defenses upon which they intend to rely at trial or

---

[11](...continued)
no control, which resulted in a superseding cause of Mr. Avila and Plaintiff's alleged injuries."  Amended Answer at 26, Docket No. 89.

[12]Plaintiff's First Set of Discovery Requests upon all Defendants at 1-3, Exhibit 1, Motion to Compel Regarding Miscellaneous Matters Docket No. 72.

risk having them deemed waived. As such, affirmative
defenses were pled to avoid waiver.[13]

An interrogatory that asks a defendant to state the facts supporting its affirmative

defenses is a contention interrogatory under Rule 33(a)(2). Nat'l Academy of Recording

Arts & Sciences, Inc. v. On Point Events, LP, 256 F.R.D. 678, 682 (C.D. Cal. 2009).

"Requiring a defendant to answer a contention interrogatory ... is consistent with Rule 11

of the Federal Rules of Civil Procedure, which requires parties have some factual basis for

their claims and allegations." Id. (citation omitted).

The Answering defendants argue that their objections to plaintiff's contention

interrogatories were justified. For example, the Answering defendants point out that they

also objected to Interrogatory No. 6 because it was compound and contained at least 36

distinct parts or subparts. If each of the subparts were considered a separate interrogatory,

which the Answering defendants argue would be appropriate, then plaintiff would have

exceeded the 25 interrogatory limit. "Some courts have held that if the subparts are

'subsumed within' or 'necessarily related to' the 'primary question,' they should be

counted as one interrogatory rather than as multiple interrogatories." Safeco of America

v. Rawstron, 181 F.R.D. 441, 444 (C.D. Cal. 1998). But, the Answering defendants argue

that each affirmative defense is separate.

---

[13]Defendants' Answers to Plaintiff's First Set of Discovery Requests at 2, Exhibit 2,
Motion to Compel Regarding Miscellaneous Matters, Docket No. 72.

The Answering defendants also argue that they were justified in refusing to respond to the contention interrogatories because they were overbroad.  They argue that plaintiff's requests were of the "give us everything" nature and could have potentially involved information protected by attorney-client and work-product privileges.  Finally, the Answering defendants argue that they were justified in refusing to answer these interrogatories as premature because factual discovery was still ongoing and they were still learning facts that would support their affirmative defenses.

The Answering defendants must answer Interrogatories Nos. 1-5.  Their contention that these interrogatories are premature is unavailing.  When the Answering defendants "asserted affirmative defenses in their Answer, [they] must have contemplated a Rule 11 basis in law or fact" and they are "required to reveal this Rule 11 basis, as well as other presently-known facts on the matter, when responding to [p]laintiff['s] contention interrogator[ies], regardless of how much discovery has transpired."  Firetrace USA, LLC v. Jesclard, Case No. CV-07-2001-PHX-ROS, 2009 WL 73671, at *2 (D. Ariz. Jan. 9, 2009).

Defendants' contention that providing the factual basis for their affirmative defenses might intrude upon the attorney-client privilege or work-product doctrine is unavailing. Courts have repeatedly rejected this ground for refusing to answer such interrogatories. See Oklahoma v. Tyson Foods, 262 F.R.D. 617, 629 (N.D. Okla. 2009) (citation omitted) ("A

-17-

party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney").

As for Interrogatory No. 6, it is compound, and each of the alternative defenses is a separate matter and should have been the subject of a separate contention interrogatory. However, the Answering defendants have asserted an extraordinary number of affirmative defenses.  In the interest of clarifying whether or not there is a factual or legal basis for the thirty-six affirmative defenses addressed by Interrogatory No. 6, the limit on interrogatories is lifted in this one instance.  The Answering defendants shall answer Interrogatory No. 6 in full.

Next, plaintiff contends that the Answering defendants have objected to every discovery request that she has served upon them and that in many instances, the Answering defendants purport to answer the discovery request "notwithstanding the objection."  Plaintiff argues that the Answering defendants should be compelled to provide complete and full answers because at this point in time, plaintiff cannot tell whether the answers that have been provided are intended to be complete answers or if it they were incomplete answers with material withheld pursuant to the objection.  As one court observed, "the phrase 'notwithstanding and without waiving said objections' raises a question that the remainder of the response fails to answer: What additional responsive information, if any, is being withheld based upon the stated objection?"  G'Francisco v.

<u>GoFit, LLC</u>, Case No. 3:13–1084, 2015 WL 247873, at *2 (M.D. Tenn. Jan. 20, 2015).  The court

ordered the defendants to

> serve a supplemental response to each interrogatory or request
> for production for which their initial response contained the
> phrase "Notwithstanding and without waiving said objec-
> tions."  In such supplemental responses, Defendants shall state
> whether the responsive information previously provided was
> complete or, alternatively, whether Defendants are withhold-
> ing additional responsive information subject to their objec-
> tions.

<u>Id.</u>  Plaintiff requests that the Answering defendants be made to do the same here.

Counsel for the Answering defendants avers that plaintiff's counsel was informed

at the "meet and confer" that "<u>all</u> of Defendants' discovery responses were complete and

good faith responses to the best of Defendants' knowledge, unless limiting language was

used to clarify overbroad requests" and that "the purpose of utilizing the 'notwithstanding'

language was to ensure that any subsequent disclosure of information would not waive the

previous mentioned objections."[14]

While using the "notwithstanding and without waiving said objection" language

might raise a question as to whether the Answering defendants were giving full and

complete answers, the Answering defendants do not need to provide supplemental

responses.  The Answering defendants' counsel has averred that their answers were

---

[14]Affidavit of Seetal Tejura [etc.] at 3, ¶ 9, Exhibit A, Defendants' Opposition to
Plaintiff's Motion to Compel regarding Miscellaneous Matters, Docket No. 80.

complete and a review of their answers to plaintiff's interrogatories suggest that they provided complete and full answers, except for the contention interrogatories which are discussed above.

Finally, plaintiff moves to compel Corizon to answer Interrogatory No. 18.   In Interrogatory No. 18, plaintiff asked Corizon:

> For the period January 1, 2010, through May 17, 2013, have you ever been a party to a civil action or arbitration proceeding involving allegations of medical negligence and/or deliberate indifference to medical needs?  If so, please state:
>
> A.    The names and designations (Plaintiff, Defendant, intervenor, garnishee, etc.) of all parties to each such action;
> B.    The cause number, state, and tribunal where each such action was filed;
> C.    The names and address of any lawyers representing any parties to each such action;
> D.    The general nature of the claims and defenses, including any allegations made against you; and
> E.    How the claims against you were resolved. [15]

Corizon refused to answer this interrogatory because plaintiff had exceeded the 25 interrogatory limit.[16]  Corizon also objected on the grounds that the interrogatory sought

---

[15]Defendant Corizon Health, Inc.'s Answers/Responses to Plaintiff's "First Set" of Discovery Requests at 16-17, Exhibit 3, Motion to Compel regarding Miscellaneous Matters, Docket No. 72.

[16]Id.

information that was irrelevant, was overbroad, and was equally available to plaintiff through Corizon's document access website.

Rule 33(a) provides:

> Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2).

Plaintiff served eight interrogatories on all defendants and twenty-one interrogatories on Corizon. Plaintiff does not dispute that in doing so, she exceeded the 25 interrogatory limit. But, plaintiff argues that she has shown good cause for this additional interrogatory because she needs this information to establish that Corizon had an unconstitutional policy or practice. She insists that the answer will provide important evidence in support of her § 1983 claim. Plaintiff argues that because this is a wrongful death case the issues at stake "are of a different magnitude that those at issue in non-death cases, and that cases such as the instant one present questions of valid importance to the public." Mahach-Watkins v. Depee, Case No. C 05-1143 SI, 2008 WL 512707, at *1 (N.D. Cal. Feb. 25, 2008). Because this is a case of valid importance to the public, plaintiff argues that "interrogatory counting" should not prevent her from taking discovery.

Rule 33(a) plainly limits the number of interrogatories to twenty-five unless a party seeks leave of the court to serve more than twenty-five. Plaintiff did not seek leave to serve

more than twenty-five interrogatories. Thus, Corizon was not required to answer Interrogatory No. 18.

Plaintiff then argues that Corizon improperly chose which interrogatories it was not going to answer.

> When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection.

Allahverdi v. Regents of University of New Mexico, 228 F.R.D. 696, 698 (D.N.M. 2005).

Plaintiff contends that Corizon refused to answer Interrogatory No. 18 but improperly chose to answer Interrogatory No. 20.

Corizon answered the first twenty-five interrogatories (the eight served on all defendants and the first seventeen served on it). Corizon then refused to answer Interrogatories Nos. 18, 19, 20, and 21. As it did with Interrogatory No. 18, Corizon objected to Interrogatories No. 19-21 as being over the limit. Corizon provided an answer of sort to Interrogatory No. 19 because it felt that it was related to Interrogatory No. 7 but it stated that it was not providing a substantive answer to Interrogatories Nos. 20 and 21. There was nothing improper about Corizon answering the first twenty-five interrogatories. See Jovanovich v. Redden Marine Supply, Inc., Case No. C10-924-RSM, 2011 WL 4459171,

-22-

at *3 (W.D. Wash. Sept. 26, 2011) (quoting <u>Paananen v. Cellco Partnership</u>, 2009 WL

3327227, *5 (W.D. Wash.2009) ("the best rule, and the one this Court applies here, is that

a responding party must answer the first 25 interrogatories").

Conclusion

Corizon's motion for entry of a protective order[17] is granted in part and denied in

part and plaintiff's cross-motion[18] is granted in part and denied in part.  Plaintiff may

depose the Corizon representative most knowledgeable about Corizon's contracts with

Mohave County and Dr. Schmidt, the morality reviews, and the performance evaluations.

Corizon shall produce 1) the contract between Corizon and Mohave County, 2) the contract

between Dr. Schmidt and/or his company, 3) the mortality reviews, and 4) the employee

evaluations.  Corizon does not have to produce its annual and quarterly financial reports

for the period of January 1, 2010 through December 31, 2014 at this time.

Plaintiff's motion to compel regarding miscellaneous matters[19] is granted in part and

denied in part.  The Answering defendants are compelled to answer plaintiff's Interrogato-

ries Nos. 1-6.  Corizon is not compelled to answer Interrogatory No. 18 and the Answering

---

[17]Docket No. 57.

[18]Docket No. 84.

[19]Docket No. 72.

defendants do not need to supplement their responses to assure plaintiff that their responses were complete.

DATED at Anchorage, Alaska, this 30th day of October, 2015.

/s/ H. Russel Holland
United States District Judge